UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY DOCKHAM RISSI,<br><br>         Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC., et al.,<br><br>         Defendants. | Case No.: 24-cv-00267-AJB-KSC<br><br>**ORDER DENYING DEFENDANT T-MOBILE USA, INC.'S MOTION TO STAY**<br><br>**(Doc. No. 45)** |

  Before the Court is Defendant T-Mobile USA, Inc.'s ("T-Mobile") motion to stay the instant action pending the outcome of Plaintiff Emily Dockham Rissi ("Plaintiff") and NextGen Global Resources, LLC's ("NextGen") arbitration. (Doc. No. 45.) For the reasons set forth below, the Court **DENIES** T-Mobile's motion.

**I. BACKGROUND**

  This action concerns Plaintiff's allegations regarding employment with Defendants T-Mobile, NextGen and Kineticom, Inc., (collectively "Defendants"). (*See* Doc. No. 1-2, "Compl." at 10–27.) Plaintiff alleges that in October 2020 she was contracted by Kineticom to perform work exclusively for T-Mobile. (*Id.* ¶¶ 13–14.)

  In May 2021, Plaintiff accepted a full-time position with T-Mobile in San Diego that she initially performed remotely due to the COVID-19 pandemic. (*Id.* ¶¶ 21, 27.) The

1

position was a step down from her previous employment and, despite being overqualified, Plaintiff was paid less than she was worth because "it would not be fair to the other *female* senior project managers" to pay Plaintiff her actual worth. (*Id.* ¶¶ 23–24 (emphasis in original).) As T-Mobile transitioned back to in-person work, Plaintiff was permitted to continue working remotely; however, when Plaintiff relocated out of state, T-Mobile began pressuring her to return to work in-person at the San Diego office. (*Id.* ¶¶ 27, 29, 32.) As a solution to permit Plaintiff to retain her remote status, T-Mobile agreed to allow Plaintiff to return to working for T-Mobile through a third-party. (*Id.* ¶ 34.) To that end, T-Mobile negotiated Plaintiff's employment with NextGen where she would continue to perform the same work for T-Mobile with the same team; however, Plaintiff was pressured by T-Mobile into submitted her resignation prior to formally receiving her new employment agreement from NextGen. (*Id.* ¶¶ 35–37.)

Days later, Plaintiff signed the new agreement with NextGen. (*Id.* ¶ 41.) After a series of delays in her on-boarding, Plaintiff requested to return as a T-Mobile employee instead. (*Id.* ¶¶ 41–48.) T-Mobile refused to authorize her return despite a VP-approval to bypass the four-month wait required for former employees had resigned. (*Id.* ¶¶ 49–50.) At that point, NextGen took the position that Plaintiff was never considered its employee. (*Id.* ¶ 51.) Plaintiff finally alleges that T-Mobile coerced her to resign "as pretext to circumvent other layoffs" and told her "remote work was not a tenable position" only six months prior to shifting the majority of their offices to remote work. (*Id.* ¶¶ 53–54.)

On December 29, 2023, Plaintiff filed a complaint in San Diego County Superior Court alleging nine causes of action against Defendants.[1] (*See generally* Compl.) Specifically, Plaintiff brings five causes of action against both T-Mobile and NextGen: (3) unjust enrichment, (5) failure to pay earned wages pursuant to Cal. Labor Code § 204, (6) waiting time penalties pursuant to Cal. Labor Code § 203, (7) intentional misrepresentation, and (9) unfair business practices pursuant to of Cal. Bus. & Prof. Code

---

[1] Plaintiff has settled with Kineticom. (Doc. No. 15.)

§§ 17200, *et seq.* ("UCL").[2] (*Id.* ¶¶ 76–89, 98–128, 139–45.) Additionally, Plaintiff brings four causes of action solely against T-Mobile: (1) wrongful termination in violation of public policy, (2) discrimination based upon sex and/or race/ethnicity pursuant to Cal. Gov. Code §§ 12940, *et seq.*, (4) failure to pay overtime wages pursuant to Cal. Labor Code §510, and (8) intentional interference with a prospective economic advantage. (*Id.* ¶¶ 55–75, 90–97, 129–38.)

T-Mobile removed the case to this Court on February 9, 2024. (Doc. No. 1.) NextGen moved to compel arbitration and stay the action pending resolution of arbitration between Plaintiff and NextGen (Doc. No. 16), which the Court granted on January 15, 2025, as to those parties only (Doc. No. 33). On May 23, 2025, T-Mobile filed the instant motion to stay the action pending arbitration of NextGen's claims. (Doc. No. 45.) Plaintiff filed an opposition (Doc. No. 49), to which T-Mobile replied (Doc. No. 52).

## II. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration.").

The Ninth Circuit has "identified three non-exclusive factors courts must weigh when deciding whether to issue a docket management stay: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer

---

[2] For accuracy, the numbering of the listed claims corresponds to the cause of action numbering in Plaintiff's complaint.

in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (quoting *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023)) (cleaned up). "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

### III. DISCUSSION

T-Mobile generally argues the requested stay "would be in the interests of judicial economy, prevent inconsistent results," "prevent[] the risk of duplicative recovery," and "preserve the status quo in litigation until the arbitration, generally a speedier and relatively inexpensive means of dispute resolution, is completed." (Doc. No. 45 at 6, 9.) The Court will analyze each argument in turn.

#### A. Judicial Efficiency

T-Mobile argues that a stay would avoid inconsistent findings and otherwise promote judicial efficiency. (Doc. Nos. 45 at 7–9; 52 at 4–7.) First, T-Mobile argues that a stay is warranted to avoid inconsistent findings because there are overlapping questions of fact about which both the arbitrator and the Court will be required to make determinations. (Doc. No. 45 at 7–8.) Specifically, five of the causes of action are asserted against both NextGen and T-Mobile and would require factual findings about NextGen's conduct to resolve. (*Id.* at 8; Doc. No. 52 at 5–7.) Additionally, T-Mobile argues that the four causes of action raised solely against T-Mobile include questions of fact that are common to NextGen and to the shared intentional misrepresentation claim. (Doc. Nos. 45 at 8; 52 at 5–6.)

Second, T-Mobile asserts that a stay would promote judicial efficiency because arbitration is "characteristically a speedier process than litigation" and the parties "will engage in expedited fact discovery that could limit the issues ripe for consideration in litigation, or could result in discussions that lend all parties more favorable to alternative dispute resolution." (Doc. No. 45 at 9.)

T-Mobile's arguments rely heavily on the assertion that there are common questions of fact and presume the arbitrator's findings on those questions will have a preclusive or otherwise binding effect on the issues remaining before this Court. Plaintiff strongly contests the first assertion, arguing that the factual allegations and corresponding claims against T-Mobile and against NextGen arise from separate periods of employment. (*See* Doc. No. 49 at 7–10.) The Court agrees with Plaintiff that the asserted overlap is largely superficial. In arguing that all of Plaintiff's allegations "are based on the same universe of facts" (Doc. No. 52 at 5 n.2), T-Mobile draws the bounds of that universe with such broad scope that the materiality of specific factual allegations to specific claims is lost.

To drill down, three of the five causes of action brought against both Defendants are wage and hour violations based on Plaintiff's distinct and separate periods of employment with each Defendant. For instance, with regard to the fifth cause of action, Plaintiff asserts a failure of T-Mobile to pay her overtime from October 2020 to May 2021 (Compl. ¶¶ 99, 101, 105) and of NextGen to pay her wages for approximately 20 hours of work completed between July 2022 and August 29, 2022, while she waited to be onboarded (*id.* ¶¶ 102, 106). Similarly, in the sixth cause of action, Plaintiff asserts three distinct claims for waiting time penalties—one against each named defendant covering distinct dates of employment, each with its own delineated requested recovery. (Compl. ¶¶ 108–15.) The ninth cause of action brought pursuant to the Unfair Competition Law appears derivative of the wage and hour causes of action. (*Id.* ¶¶ 140–45.)

The four causes of action brought against T-Mobile, to the exclusion of NextGen, do not overlap with arbitrable claims brought against NextGen. For example, in the complaint, Plaintiff alleges that T-Mobile discriminated against her on the basis of gender by paying Plaintiff at "a lower rate than she deserved because it 'would be unfair to the other female project managers' for Plaintiff to be paid at a rate appropriate to her knowledge and experience." (Compl. ¶ 69–72.) The fourth cause of action asserts T-Mobile never compensated Plaintiff for the significant number of overtime hours worked while employed directly with T-Mobile. (Compl. ¶¶ 93–97.) Although the first and eighth causes

of action refer to NextGen's relationship with Plaintiff, there is limited overlap of material facts between these claims and those brought against NextGen. (*See* Compl. ¶¶ 60–64 (asserting T-Mobile intentionally didn't provide information to NextGen that was necessary to complete Plaintiff's onboarding so that T-Mobile could terminate Plaintiff without having to go through the typical termination process), 130–34 (asserting that, by refusing to cooperate with the onboarding process, T-Mobile intentionally interfered with the economic relationship between Plaintiff and NextGen that would have resulted in an economic benefit to Plaintiff).)

The Court finds there may be a factual overlap between the arbitrable claims and remaining two non-arbitrable claims. First, with regard to the intentional misrepresentation claims, proving the falsity of T-Mobile's statement may overlap with factual findings about NextGen's intentions in employing Plaintiff. (*See* Compl. ¶¶ 117–21 (alleging T-Mobile intentionally misled Plaintiff by stating that "if she were to resign from her position by July 22, 2022, she would receive a new role at Defendant NextGen that was substantially similar to her role at T-Mobile").) Second, as currently pled, the third cause of action seeks damages for unjust enrichment from both Defendants for the same work conducted by Plaintiff over the same period of time—July 2022 to August 29, 2022—while in the "professional 'limbo' manufactured by Defendants T-Mobile and NextGen." (*Compare* Compl. ¶¶ 83 *and* 85 *with* ¶¶ 86–87.)

However, considering the non-arbitrable claims in relation to those compelled to arbitration, the Court does not find that the minimal potential overlap tips the scale such that the arbitrable claims predominate. *Cf. Cal. Crane Sch., Inc.*, 621 F. Supp. 3d at 1033 (quoting *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 Fed. Appx. 412, 415 (9th Cir. 2002)) ("A stay is generally 'appropriate where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision.'"). Rather, in circumstances such as this, some degree of "redundancy seems inevitable." *Cal. Crane Sch., Inc. v. Google LLC*, 621 F. Supp. 3d 1024, 1033 (N.D. Cal. 2022). Additionally, despite possibility of shared facts with regard to a couple claims, T-

Mobile itself admits that "the arbitrator's findings are not binding in the litigation between Plaintiff and T-Mobile." (Doc. No. 52 at 8 n.4.) With such minimal overlap and any such overlap non-binding, it is speculative that the arbitrator's decision will have any impact on the outcome of the non-arbitrable claims. *See Cal. Crane Sch., Inc.*, 621 F. Supp. 3d at 1034 n.3 (collecting cases).

Given that the parties will still need to litigate non-arbitrable claims and the outcome of the arbitration would likely have minimal, if any, impact on litigation of these claims, a stay would serve to delay rather than promote judicial efficiency, requiring the Court to expend resources monitoring the case while it languishes. *See, e.g.*, *Cal. Crane Sch., Inc.*, 621 F. Supp. 3d at 1033–34 ("To the contrary, staying the non-arbitrable claims would only serve to needlessly delay their resolution."); *Ireland-Gordy v. Tile, Inc.*, 760 F. Supp. 3d 946, 964–65 (N.D. Cal. 2024) (citation omitted) (finding the "likelihood of some overlap in proof between the arbitrable and non-arbitrable claims" to be "not [a] particularly weighty [concern] because regardless of the outcome of the arbitration, the non-arbitrable claims will need to be litigated in this court"). As such, judicial efficiency weighs against staying the action pending resolution of the arbitrable claims.

### B.     Possible Damage If Stay Were to Be Granted

Next, T-Mobile argues that the stay should be granted because the only prejudice Plaintiff would suffer, if any, would be "a delay in compensation for past harms[, which] does not equate to a strong showing of prejudice." (Doc. No. 52 at 8; *see also* Doc. No. 45 at 9.)

Although Plaintiff's UCL claim seeks injunctive relief, considering that Plaintiff no longer is employed by either NextGen or T-Mobile, there does not appear to be any accruing harm. *Cf. Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110–12 (9th Cir. 2005). As T-Mobile notes, the delay in potential recovery of monetary damages is not an independently sufficient basis alone to deny a stay. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268–70 (9th Cir. 1962).

///

In opposition, Plaintiff argues that she has "a right to a judicial determination of her claims now." (Doc. No. 49 at 11.) Despite T-Mobile's assertions that arbitration is "characteristically [] speedier" and "likely [to] result in a swifter resolution," neither party provides the Court with an estimate of how long until arbitration between Plaintiff and NextGen will be complete.[3] (*Cf.* Doc. Nos. 45 at 9; 52 at 8.) Given that the end of the proposed stay would be triggered by an external event that is not time-limited, such a stay would be indefinite, *see In re PG&E Corp. Sec. Litig.*, 100 F.4th at 1084, which weighs heavily against granting the stay, *see Leyva*, 593 F.2d at 864 ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court.").

Considering the relative strength of both arguments and counterarguments, this factor weighs against granting the stay.

### C.  Potential Hardship Suffered If Stay Were Denied

Finally, T-Mobile argues a stay would prevent incurring "unnecessar[y]" litigation costs and prevent the risk of duplicative recovery. (Doc. Nos. 45 at 9–10; 52 at 6–7.) As to the latter, T-Mobile asserts that Plaintiff's wrongful termination, intentional misrepresentation, and intentional interference with prospective economic advantage causes of action seek damages in the form of "lost wages" from T-Mobile and, in the case of the latter two causes of action, also from NextGen. (Doc. Nos. 45 at 10; 52 at 6.) According to T-Mobile, Plaintiff seeks recovery of "the same lost wages damages from both NextGen and T-Mobile" for multiple claims. (Doc. Nos. 45 at 10; 52 at 6.) As such, Plaintiff could obtain multiple recoveries for the same purported harm across arbitration from NextGen and litigation from T-Mobile. (Doc. Nos. 45 at 10; 52 at 6–7.)

---

[3]  Based on Plaintiff and NextGen's most recent joint status report, the claims were only submitted to the American Arbitration Association on April 14, 2025. (*See* Doc. No. 37 at 2.) Thus, proceedings are in their infancy, if commenced at all. *Cf. Parodi v. Liberty Mut. Ins. Co.*, No. 23-CV-01663-JSC, 2023 WL 4535088, at *3 (N.D. Cal. June 6, 2023) (finding the active status of the arbitration to demonstrate a lack of prejudice from granting the stay).

However, the risk of duplicative recovery is minimal because, assuming Plaintiff is successful on both intentional misrepresentation claims, then the measure of damages against T-Mobile—whose misrepresentation occurred first—may contemplate Plaintiff's $155,000 salary promised by NextGen as mitigation. Moreover, the expenses T-Mobile would incur through being required to proceed with litigating the claims against it are hardly unnecessary as T-Mobile would incur them either now or later. *See Lockyer*, 398 F.3d at 1112 ("To be sure, if the stay is vacated Mirant must proceed toward trial in the suit in the district court, but being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*.").

As neither of T-Mobile's arguments is compelling, this factor weighs only minimally in favor of granting the stay.

### D. Balancing of Factors

Considering that the arbitrable claims do not predominate, that the outcome of non-arbitrable claims will not depend upon the arbitrator's decisions, and that the requested stay would be indefinite, the Court finds that judicial efficiency and the potential damage to Plaintiff, though minimal, together outweigh the potential hardship T-Mobile will face proceeding with litigation.

## IV. CONCLUSION

Based on the analysis set forth above, the Court **DENIES** T-Mobile's motion to stay. (Doc. No. 45.) T-Mobile and Plaintiff are directed to contact the chambers of U.S. Magistrate Judge Karen S. Crawford to request a Scheduling Order be issued.

**IT IS SO ORDERED**.

Dated: July 14, 2025

Hon. Anthony J. Battaglia
United States District Judge